IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| LUIS ROBERTO CASTILLO, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | EP-10-CV-247-KC |
| | § | |
| JUAN D. HERNANDEZ, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day, the Court considered Plaintiffs' "Motion for Judicially Supervised Notice Under 29 U.S.C. § 216(b)" ("Motion"), Defendants' "Response to Plaintiffs' Motion for Judicially Supervised Notice" ("Response"), and Plaintiffs' "Reply to Defendants' Response" ("Reply"). For the reasons set forth herein, the Motion is **GRANTED** in part.

**I.   BACKGROUND**

Plaintiffs Luis Roberto Castillo, Oscar Cordova Rivas, Luis Elías Duran Hernandez, and Ricardo Medina filed this lawsuit on July 8, 2010, against their former employer, Defendants Juan D. Hernandez and Irma Hernandez ("Defendants"). These plaintiffs alleged that Defendants paid them in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19 *et seq*. (West 2009). First Am. Compl. ¶ 1, ECF No. 1. Specifically, these plaintiffs alleged that Defendants did not pay them the minimum wage or overtime wages for work performed in excess of forty hours per week. *Id.* ¶ 2. These plaintiffs brought this action as individuals and on behalf of "all other

similarly situated employees of Defendants." *Id.* ¶ 4.  These plaintiffs subsequently amended their Complaint to add Jose Juan Holguin Salazar and Jose Alfredo Duran Gonzalez as named plaintiffs.  Second Am. Compl., ECF No. 9.

All of the Plaintiffs now ask the Court to authorize them to proceed as a collective action pursuant to 29 U.S.C. § 216(b).  Plaintiffs propose a class of "all persons currently or formerly employed by or who received payment for services by Defendants from July 7, 2007 through the present."  Pls.' Proposed Order 1, ECF No. 21-2.  Plaintiffs request that the Court authorize the expedited issuance of a Notice to all members of the proposed class of their right to join the suit, and have attached a proposed form of this notice.  Mot. 14, ECF No. 21; *see* Mot. App., ECF No. 21-1, Ex E.  To assist in sending this notice, Plaintiffs ask the Court to order Defendants provide them with a "a computer-readable data file containing the names, addresses, e-mail addresses, and telephone numbers" of all members of the proposed class in order to send the desired notice.  Pls.' Proposed Order 1-2.  Finally, Plaintiffs request that the statute of limitations for the class members be tolled for the period from July 7, 2007, until the date the Court issues its order.  *Id.* at 2.

In support of their Motion Plaintiffs submit as evidence seven sworn affidavits, six of which were sworn by the named plaintiffs in this case.  Mot. App. Ex. A.  The seven affiants all state that they worked for Defendants, were paid by the day, were paid less than the minimum wage, were not paid overtime wages despite working more than forty hours per week, that all employees at the Chaparral location performed the same duties and were paid the same wages, and that other employees are interested in joining this suit.  *Id.*

Defendants argue that Plaintiffs must convince the Court that there are other employees who might be interested in joining this suit, and that Plaintiffs have not met their burden.  Resp.

5-6, ECF No. 24.  Defendants also note that new plaintiffs may join the suit even if this Court does not certify this case as a collective action.  *See id.* at 6 n.4.  In support of their Response Defendants filed an affidavit from Defendant Juan Hernandez, who asserts that he spoke to thirty-three current and former employees.  Resp. App. C.  According to this affidavit, all of these employees told Defendant Juan Hernandez they were unwilling to join in this suit.  *Id.* at 1. Defendant Juan Hernandez has stated that in the past three years, Defendants have employed a total of approximately fifty employees.  *Id.*  Defendants argue it would be unfair to burden them with the expenses of the class certification and notice process for what amounts only to a "fishing expedition."  Resp. 5.

Subsequent to Defendants' Response, Plaintiffs filed a "Notice of Filing of Opt-in Forms" ("Notice"), which contained signed, unsworn forms executed by six individuals giving consent to join a collective action.  Notice, ECF No. 25.  Plaintiffs then filed a Reply in which they emphasized that the record showed that some employees had already joined this action since the case began, and that the forms contained in their Notice established the existence of still more potential plaintiffs.  Reply 3, ECF No. 27.  Plaintiffs noted that three of the individuals Defendant Juan Hernandez claimed in his affidavit were uninterested in the suit had already executed opt-in forms.  *Id.* at 5.  Plaintiffs also attached an unsworn statement from one of those three employees denying that he had spoken to Defendant Juan Hernandez about joining the suit, despite Defendant Juan Hernandez's claims to the contrary.  Reply Ex. A, ECF No. 27-1.

II.   DISCUSSION

    A.   **Standard**

Section 216(b) of the FLSA authorizes "any one or more employees for and in behalf of

himself or themselves and other employees similarly situated" to bring an action for violations of the act. 29 U.S.C. § 216(b). The FLSA further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* By contrast, in a class action, such as one under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a person must take affirmative measures to opt out of the action. *See* Fed. R. Civ. P. 23(c)(2) (requiring notice to class members of their right to request "exclusion" from the class, and the time and manner for doing so). The difference between class actions under Rule 23 and collective actions under § 216(b) is "fundamental [and] irreconcilable," as under the latter "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class." *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975). As a result, a plaintiff may not bring a Rule 23 class action under § 216(b). *Id.*

However, the only guidance that the text of the FLSA provides on the standard for a § 216(b) collective action is that all plaintiffs must be "similarly situated." 29 U.S.C. § 216(b). Courts currently recognize two methods of determining whether a group of employees is so similarly situated as to warrant issuing them notice of their right to join in a FLSA collective action, and the Fifth Circuit has yet to take a side on the issue. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 n.1 (5th Cir. 2010) (noting that the Fifth Circuit has "not adopted any of the varying approaches for determining whether employees' claims are sufficiently similar to support maintenance of a representative action").

The first method, typified by *Lusardi v. Xerox Corp.*, involves a two-step approach to

determining whether proposed plaintiffs are similarly situated.[1] 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted in part, appeal dismissed, Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J. 1988)*, aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.,* 975 F.2d 964 (3d Cir. 1992). At the first step, a court conditionally certifies a class if there are "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995) (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J) ("*Sperling I*"), *aff'd in part and appeal dismissed in part,* 862 F.2d 439 (3d Cir. 1988), *aff'd, Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165 (1989) ("*Sperling II*")). This standard is "fairly lenient" and "typically results" in conditional certification. *Id.* at 1213. At the second step, "precipitated by a motion for 'decertification' by the defendant [and] usually filed after discovery is largely complete . . . the court has much more information on which to base its decision" as to whether plaintiffs are similarly situated, and may proceed to decertify the class if they are not. *Id*. at 1214. Under the second method, the court simply looks to Rule 23 factors – numerosity, commonality, typicality, and adequacy – to determine class certification, without dividing the process into two steps. *Id.*

As it has before, this Court elects to utilize the two-step *Lusardi* analysis rather than the Rule 23-based approach. *See Sims v. Housing Auth. of El Paso,* No. EP-10-CV-109-KC, 2010

---

[1] While *Lusardi* does not fully articulate the method it has come to stand for, that method has been dubbed the *"Lusardi* analysis" by later cases. *See, e.g.*, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 n.6 (5th Cir. 1995) (*overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003)). Although *Lusardi* and some of its progeny involved age discrimination claims rather than claims under the FLSA, those cases are applicable here because the relevant age discrimination statute "explicitly incorporates" § 216(b) of the FLSA. *Id.* at 1212.

WL 2900429 (W.D. Tex. July 19, 2010) (order conditionally certifying a FLSA class under the two-step approach); *Escobedo v. Dynasty Insulation, Inc.*, No. EP-08-CV-137 (W.D. Tex. Sept. 19, 2008) (same). The leniency of the certification standard at the first stage of the *Lusardi* analysis is balanced by the onus that § 216(b) places on potential parties to affirmatively opt into a collective action. Potential plaintiffs in a § 216(b) collective action who take no steps to be part of the class effectively screen themselves out without any court action. As a result, affected individuals who are in the best position to decide whether they are similarly situated to the named plaintiffs have the opportunity to do so, yet the Court retains the option to later decertify the class if it disagrees.

     Nevertheless, while the certification standard is lenient under the *Lusardi* approach, it is by no means automatic. *See Badgett v. Texas Taco Cabana, L.P.*, No. H-05-3624, 2006 U.S. Dist. LEXIS 74530, at *5 (S.D. Tex. Oct. 3, 2006). "[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *H&R Block v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (quoting *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)). Courts have made notably varying conclusions in applying this standard. *Compare Bursell v. Tommy's Seafood Steakhouse*, No. H-06-0386, 2006 U.S. Dist. LEXIS 80526 (S.D. Tex. Nov. 3, 2006) (granting conditional class certification for a class of all employees of a restaurant between 2003 and 2006 based on statements of two former employees), *with H&R Block*, 186 F.R.D. 399 (denying conditional class certification based on statements of two former employees). At the very least, it is clear from the relevant case law that courts must strive to balance the efficiency of aggregating claims in one action against the expense and inconvenience of frivolous litigation.

### B. Analysis

The Court will first address the conditional certification of the proposed class. It then will address the particular requests related to furnishing notice of this suit to class members.

#### 1. Conditional class certification

Courts will conditionally certify a FLSA collective-action class if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8 (5th Cir. 1995) (quoting *Sperling I*, 118 F.R.D. at 407). In determining whether a plaintiff's pleadings and affidavits are sufficient, some courts have found it helpful to see whether such documents prove: "'(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.'" *Tolentino v. C & J Spec-Rent Servs. Inc.*, --- F. Supp. 2d ---, 2010 WL 2196261, at *3 (S.D. Tex., 2010) (quoting *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)). Because of the lack of evidence at the conditional certification stage, the standard for examining a plaintiff's showing is "fairly lenient." *Mooney,* 54 F.3d at 1214. This is in keeping with the broad remedial goal of the statute. *See Sperling II*, 493 U.S. 165, 173 (1989) ("The broad remedial goal of the statute should be enforced to the full extent of its terms.").

Plaintiffs have mustered sufficient evidence to meet the "fairly lenient" burden imposed on them at the conditional certification stage. *See Mooney*, 54 F.3d at 1213. Plaintiffs' affiants allege that all the employees at the Chaparral, New Mexico plant perform the "same" or "more or less the same" duties as the affiants, *e.g.,* Mot. App., Ex. A. at 10, 16, and that other employees at

that plant suffered the same alleged treatment as the affiants. *E.g., id.* at 1, 9.  Specifically, the affiants allege that "most workers" at Defendants' plant in Chaparral worked more than forty hours per week, were not paid any additional amounts for the hours after forty, and were paid between $33.00 and $41.50 per day. *E.g., id.* at 6, 18.  The affiants claim to have gained knowledge of these wage underpayments through personal experiences and observations, as well as contact with co-workers. *E.g., id.* at 3, 7.  Given the specificity in the affiants' declarations about work location, duties of employees, amounts of pay, and hours worked, the Court finds this sufficient to show "'that the putative class members were together the victims of a single decision, policy, or plan.'" *Mooney*,  54 F.3d at 1214 n.8 (5th Cir. 1995) (quoting *Sperling I*, 118 F.R.D. at 407).

Defendants argue that Plaintiffs must prove not just the existence of other, similarly situated employees, but also that such employees are interested in joining the suit. Resp. 3-4.  Defendants further claim that Plaintiffs have not done so here. *Id.* at 6.  Assuming for the purposes of this Order that Plaintiffs are required to make such a showing, this Court finds that they have done so.  Plaintiffs' affidavits specifically aver that other individuals are interested in joining this action. *E.g.,* Mot. Ex. A, at 7, 13.  This Court has previously certified a class based on less evidence. *Sims v. Housing Auth. of El Paso,* 2010 WL 2900429, at *3 (certifying class based on only two sworn declarations).  Therefore, Plaintiffs' evidence is sufficient at this stage.

Additionally, by their own admission Defendants have employed a total of approximately fifty individuals over the course of the last three years. Resp. App. C.  Of these, four were the original named Plaintiffs here, and two more joined later.  Second Am. Compl.  When this much of the workforce has already joined the suit, some of them after the suit was already filed, this

Court finds it indicative of at least potential interest in the remaining members of the class. Furthermore, the six opt-in forms in Plaintiffs' Notice, signed by current employees of Defendants, indicate a continuing desire among members of the class to join this suit.

*Dominguez v. A D Towing,* cited by Defendants, is distinguishable on its facts. *See Dominguez v. A D Towing*, No. EP-09-CV-060-DB (W.D. Tex. Dec. 29, 2009). There, the defendants submitted an affidavit that other similarly situated class members were specifically not interested in joining the suit, and the plaintiffs did not refute that affidavit in any way. *Id.* at 6. Defendants here have submitted a similar affidavit. *See* Resp. App. C. But one of the employees whom Defendant Juan Hernandez alleges spoke with him and disclaimed any interest in joining the suit, Sinai Marquez, has submitted a declaration of his own. *Compare* Resp. App. C *with* Reply Ex. A. Mr. Marquez states that he never in fact spoke with Defendant Juan D. Hernandez about joining this suit. Reply Ex. A. Additionally, Marquez and two other employees have filed opt-in forms. Reply 5. This contradiction calls into question Defendant Juan Hernandez's broad claim that other employees are uninterested in suing Defendants, and further supports Plaintiffs' allegations of the existence of interested class members.

Thus, Plaintiffs' affidavits, together with their opt-in forms and declaration, constitute sufficient evidence to clear the low hurdle at the notice stage for establishing "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *See Mooney*, 54 F.3d at 1214 n.8 (quoting *Sperling I*, 118 F.R.D. at 407). The Court therefore conditionally certifies the following class: "All persons currently or formerly employed by or who received payment for services by Defendants for work at the Chaparral, New Mexico location from July 7, 2007 through the present." The Court has added the phrase "at the

Chaparral, New Mexico location" because Plaintiffs' affidavits only relate to the other employees working there.  Plaintiffs have submitted no evidence of employees at any other possible work locations being similarly situated.

### 2. Expedited notice to class members

Plaintiffs also seek permission of the Court to expedite the sending of notice to class members and to require Defendants to provide Plaintiffs with contact information so that notice may be implemented.  District courts can, and often should, involve themselves in structuring the notices that are furnished to potential class members who may be in a position to opt into a collective action.  *See Sperling II*, 493 U.S. at 171 (observing that "trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute" and holding that it "lies within the discretion of the trial court to begin its involvement early, at the point of initial notice").  Accordingly, district courts may review the form of the proposed notice, set a cut-off date for potential plaintiffs to join the suit, and authorize discovery of information related to locating potential class members.  *See id.* at 170-72.

#### a. Form of proposed notice

Plaintiffs have filed a proposed form of the notice to be provided to potential class members.  *See* Mot. App. Ex. E.  Subject to the amendment noted below, the Court finds that this proposed form is adequate for the purposes of informing potential class members of the pendency of this suit, their rights to opt into it, and the effects of choosing to opt in or not.  Furthermore, these forms adequately inform potential class members that Defendants dispute the claims at issue and that the Court expresses no opinion as to the ultimate merits of the case or the ultimate validity of the conditionally-certified class.  *See id.*; *see also Sims,* 2010 WL 2900429 (W.D.

Tex. July 19, 2010) (order approving similar notice and opt-in forms). Accordingly, subject to the amendments set forth below, the Court approves the form of proposed notice and the proposed opt-in form. Plaintiffs are authorized to send such notices by U.S. mail as soon as they deem it practicable, but shall deposit all such authorized notices at the Post Office on the same day. Plaintiffs shall file notice with the Court within three days of having deposited the notices.

Plaintiffs shall add the phrase "at the Chaparral, New Mexico location" after "Pallets of El Paso" in their description of the certified class in the notice to be sent to potential class members. As noted above, Plaintiffs' affidavits specifically relate only to the employees at the Chaparral plant; there is no evidence of employees at any other possible work locations being similarly situated.

### b.     Cut-off date

Plaintiffs propose that opt-in returns from prospective class members must be filed within ninety (90) days from the date each person receives the mailing, if they are to be deemed timely for the purposes of joining the instant suit. Mot. 14. The Court finds that this is an excessive amount of time, and is insufficiently precise because the exact date of receipt may vary from one class member to another. Therefore, the Court adopts instead a cut-off date as follows:

1. The deadline for filing the opt-in returns shall be sixty (60) calendar days from the date the notices are sent by the Plaintiffs to the potential class members, inclusive of such sending day. The date of filing shall be the postmark date on the envelope mailed by each class member.

2. The notice sent to potential class members shall have the deadline for executing and returning the form spelled out as a date certain, and not described in terms of

    an interval of time related to some other date.

3. If the postmark filing deadline shall fall on a date for which there is no scheduled Post Office service, then the postmark filing deadline shall be extended to the next succeeding day on which Post Office service is scheduled.  This later date shall be noted as the postmark filing deadline on any notices sent to potential class members.

4. Plaintiffs shall inform the Court of this postmark filing deadline as part of their notice to the Court described above in subsection (a).

### c.   Discovery of identity of potential class members

Plaintiffs request expedited limited discovery of information to be used to identify and contact potential class members.  Plaintiffs have specifically requested the full name, address, telephone number, and email address of each putative class member.  Mot. 17.  Plaintiffs specifically request the information in a computer-readable data file.  *Id.*

Plaintiffs in FLSA class actions are permitted to use discovery for such purposes. *Sperling II*, 493 U.S. at 171.  District courts commonly grant expedited discovery of such information to Plaintiffs in order to enable efficient joinder of interested parties at an early stage in the case.  *See Sims,* 2010 WL 2900429, at *5 (W.D. Tex. July 19, 2010) (order granting expedited discovery of information relating to the identity of potential class members).

The Court finds that this discovery request is well taken, and therefore grants it subject to the following conditions:

1. Defendants shall have fourteen (14) calendar days from the date of this order to turn over the identifying information specified above to Plaintiffs' attorneys.

  2.  Defendants shall turn over the information in a reasonable electronic format.

  3.  Plaintiffs' attorneys shall use all commercially reasonable privacy and data security measures to safeguard the personal information furnished by Defendant, as well as any such measures required by law.

### d. Tolling of the statute of limitations

Finally, Plaintiffs have preemptively sought equitable tolling for the benefit of potential class members who may choose to opt into this action and whose claims may be adversely affected by the normal running of the FLSA limitations period. Mot. 15. "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). Equitable tolling of the statute of limitations is based on the principle that no one "'may take advantage of his own wrong.'" *Coke v. Gen. Adjustment Bureau*, 640 F.2d 584, 596 (5th Cir. 1981) (quoting *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232 (1959)). Specifically, "[e]quitable tolling focuses on the employee's excusable ignorance." *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir. 1991). Equitable tolling applies only in "rare and exceptional circumstances," *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *Davis*, 158 F.3d at 811), and it is available only when a plaintiff diligently pursues his or her rights. *Caldwell v. Dretke*, 429 F.3d 521, 530 n.23 (5th Cir. 2005); *see also Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992) (equitable tolling is justified "when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim").

"The party who invokes equitable tolling bears the burden of proof." *Teemac*, 298 F.3d at

457 (citing *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 362 (5th Cir. 1995)). If the relevant underlying facts are undisputed, a district court may grant or deny equitable tolling as a matter of law. *See Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006); *Niehoff v. Maynard*, 299 F.3d 41, 47 (1st Cir. 2002).

In FLSA actions, the statute of limitations ordinarily continues to run with regard to potential opt-in plaintiffs until they file their opt-in consent returns. *See* 29 U.S.C. § 256. Courts have observed that there was specific legislative intent that ordinary FLSA opt-in plaintiffs not have their filing dates relate back to the date of the original complaint for statute of limitations purposes. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1006-07 (11th Cir. 1996). Accordingly, for Plaintiffs to succeed, they must prove why their case should be exempt from the standard FLSA rule by showing that they diligently pursued their rights yet were "unable to discover essential information bearing on the existence" of their claim. *See Pacheco*, 966 F.2d at 906-07.

Plaintiffs here have not met this burden. The only circumstances they cite warranting equitable tolling are Defendants' willful conduct and a diminution in the value of their claim. However, these factors will exist in many FLSA actions, and hardly qualify as "rare and exceptional circumstances." *See Teemac*, 298 F.3d at 457. These policy arguments do not justify a departure from the general rule expressed in the FLSA. *See* 29 U.S.C. § 256.

Plaintiffs cite several cases that toll the statute of limitations for all putative class members in a Rule 23 class action from the filing date of the original suit until the time a certification decision is made. Mot. 16 (citing, *e.g., Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1349-51 (5th Cir. 1985); *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983)). However, the Supreme Court's reasoning decision in *Crown Cork &*

*Seal* actually argues against routinely tolling the statute of limitations in an FLSA case, as at least one court has noted. *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136-37 (D. Nev. 1999). The statute is tolled for Rule 23 cases "because otherwise parties would file protective filings to join or intervene in the suit, 'precisely the multiplicity of activity which Rule 23 was designed to avoid.'" *Id.* at 1136 (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974), *reh'g denied*, 415 U.S. 952 (1974)). In FLSA collective actions, by contrast, "§ 216(b) affirmatively *requires* repetitious filings." *Id.* (emphasis in original). Thus, there is little reason to equitably toll the statute of limitations as a matter of course in the FLSA context. Moreover, the Fifth Circuit has already described Rule 23 and FLSA collective actions as fundamentally and irreconcilably different, strongly arguing against importing any procedures from the Rule 23 context for this case. *See La Chapelle*, 513 F.2d at 288. Therefore, on the current record, the Court declines to equitably toll the statute of limitations for any potential opt-in plaintiffs.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion (ECF No. 21) is **GRANTED** in part. The Court hereby enters the following orders:

1. The Court **ORDERS** that the following class is conditionally certified for the purposes of the instant suit:

**"All persons currently or former employed by or who received payment for services by Defendants for work at the Chaparral, New Mexico location from July 7, 2007 through the present."**

2. The Court **AUTHORIZES** Plaintiffs to send notice to the class members, at their earliest convenience, using the proposed forms, as approved above subject to the

       amendments set forth in Section II(B)(2)(a).  The Court **ORDERS** Plaintiffs to comply with the conditions set forth above in Sections II(B)(2)(a) and (b) when sending such notice.

3.     The Court **ADOPTS** the cut-off date for the opt-in returns specified in Section II(B)(2)(b).

4.     The Court **ORDERS** Defendant to turn over to Plaintiffs' attorneys the requested identifying information for the potential class members, subject to the conditions set forth above in Section II(B)(2)(c), and **ORDERS** Plaintiffs' attorneys to abide by all the restrictions set forth above.

5.     The Court **ORDERS** Plaintiffs to file notice with the Court within three (3) days of their sending the notices to potential class members.  Such filing shall specify the date on which the notices were sent to the class members, the precise class of mailing by which they were sent, and the cut-off date that was specified.

6.      On the current record, the Court **DENIES** Plaintiffs' request for equitable tolling of the statute of limitations for any potential opt-in plaintiffs.

**SO ORDERED**.

**SIGNED** on this 4th day of November, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE