# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LUIS ROBERTO CASTILLO, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | EP-10-CV-247-KC |
| | § | |
| JUAN D. HERNANDEZ, et al., | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

On this day, the Court considered "Plaintiffs' Motion for Protective Order and Request for Hearing" ("Motion"), ECF No. 49. For the reasons set forth herein, the Motion is **GRANTED** in part.

## I.  BACKGROUND

Plaintiffs Luis Roberto Castillo, Oscar Cordova Rivas, Luis Elías Duran Hernandez, and Ricardo Medina filed this lawsuit on July 8, 2010, against their former employers, Defendants Juan D. Hernandez and Irma Hernandez ("Defendants"). These plaintiffs alleged that Defendants paid them in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19 to 4-30. Am. Compl. ¶ 1, ECF No. 1. Specifically, these plaintiffs alleged that Defendants did not pay them the minimum wage or overtime wages for work performed in excess of forty hours per week. *Id.* ¶ 2. These plaintiffs brought this action as individuals and on behalf of "all other similarly situated employees of Defendants." *Id.* ¶ 4. They subsequently amended their Complaint to add Jose Juan Holguin Salazar and Jose Alfredo Duran Gonzalez as named plaintiffs. 2d Am. Compl., ECF No. 9. Upon motion of these plaintiffs, on November 4, 2010, the Court conditionally

certified the case to proceed as an opt-in collective action. Order, ECF No. 31. Plaintiffs then sent a court-approved notice form to all the potential members of the class, Notice of Mailing of Judicially-Supervised Notice, ECF No. 35, and some of those members filed forms opting into the class. *See, e.g.,* Notice of Filing of Opt-Ins, ECF No. 34. On January 29, 2011, the opt-in period expired, and the class was closed. *See* Order 11, ECF No. 31 (allowing class members sixty days in which to join this suit, measured from the date original plaintiffs' counsel sent the notices); Notice of Mailing of Judicially-Supervised Notice, ECF No. 35 (indicating a mailing date of November 30, 2010).

During the opt-in period, Defendants filed counterclaims of conversion and fraud against one of the original plaintiffs, Oscar Cordova Rivas. Defs.' Countercl. Against Counter-Defendant Oscar Cordova Rivas, ECF No. 42. Cordova Rivas moved to dismiss the counterclaim. Counter-Def. Oscar Cordova Rivas' Mot. to Dismiss Counter-Pls.' Countercls., ECF No. 43. With the Court's leave, Plaintiffs then filed an amended complaint adding a claim of retaliation, alleging that this counterclaim was "baseless and grounded solely in [Defendants'] motive to retaliate against Mr. Cordova Rivas for his participation in this lawsuit." Pls.' Mot. for Leave to File 4th Am. Compl. 3, ECF No. 46.

Most recently, Plaintiffs have filed the instant Motion in which they seek a protective order and sanctions against Defendant Juan D. Hernandez ("Hernandez"). Mot. 6. Plaintiffs allege that Hernandez sent a letter on January 24, 2011, to current and, possibly, potential members of the class in which he stated, "In order to complete the MISC 1099 forms, I am requesting your Social Security Number or Tax Payer I.D. number." Mot. 10; Mot. Ex. A, at 2, ECF No. 49-3. Plaintiffs allege that Defendants already admitted in discovery that Plaintiffs

were their employees. Mot. 10-11; Mot. Ex. F. Therefore, Plaintiffs argue, Hernandez's asserted motive for requesting this information, that he needed it to complete MISC-1099 forms used to report money paid to independent contractors, was merely a pretext for harassing the class members over their immigration status. Mot. 11.

In the Motion Plaintiffs also request an order protecting from discovery any information relating to Plaintiffs' immigration status, including Social Security numbers, employment authorization information, birthplace, citizenship, school location, and residence for the last ten years. Mot. 13. Plaintiffs allege that Defendants have already inquired into this information "both inside and outside of the discovery process." Mot. 14. Plaintiffs argue this information is irrelevant to the claims and defenses in this case, and that inquiry into this information only serves to intimidate Plaintiffs from pursuing their rights. Mot. 13-14. Plaintiffs also similarly seek to prohibit discovery of Plaintiffs' current and former employers because that information is irrelevant and disclosure of it "would give Plaintiffs reasonable fear of retaliation." Mot. 14.

Finally, Plaintiffs request sanctions against Hernandez for alleged witness intimidation and attempts to coerce testimony. Mot. 14-15. Plaintiffs allege that Hernandez intimidated two potential witnesses into signing documents indicating knowledge of Cordova Rivas's alleged fraud and conversion, when in fact those witnesses had no such knowledge. Mot. 7. Plaintiffs also allege that Hernandez contacted a potential opt-in plaintiff, Justin Chavez, and threatened to bring a false claim against him if he joined this case. *Id.* Hernandez also allegedly tried to coerce Chavez into joining the suit against Cordova Rivas. *Id.*

## II. DISCUSSION

### A. Protective Order Preventing Contact

Citing the allegedly intimidating and harassing contacts between Hernandez and Plaintiffs, Plaintiffs seek a protective order limiting contact between Defendants and Plaintiffs and potential plaintiffs. Mot. 8. Defendants have not responded to this request.

"It is a well-established principle that district courts enjoy wide latitude in managing complex litigation in general and class actions in particular." *Gates v. Cook*, 234 F.3d 221, 227 (5th Cir. 2000). Because of the possibility of abuse of class actions under Federal Rule of Civil Procedure 23, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 675 n.1 (N.D. Ga. 1999) (recognizing that *Gulf Oil* applies to courts' Rule 23 authority to control both sides in a class action, even though the facts of *Gulf Oil* involved only contact between plaintiffs' counsel and potential class members). Similarly, the collective action mechanism of 29 U.S.C. § 216(b) "must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hofmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). This is because the potential for abuse under both mechanisms is the same. *Id.* at 171 (noting the similarity of potential abuse between Rule 23 class actions and the collective action mechanism used for age discrimination claims); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995) (noting that the same age discrimination statute at issue in *Hoffman-La Roche* "explicitly incorporates" § 216(b) of the

4

FLSA), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

While district courts may issue orders preventing parties or attorneys from contacting members or potential members of a class, *see Gulf Oil Co.*, 452 U.S. at 100-01, because such orders are prior restraints on speech they implicate First Amendment concerns. *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) (citing *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467 (5th Cir. 1980), *aff'd*, 452 U.S. 89 (1981)). To avoid these potential problems, orders limiting contact "must be based on a clear record and 'specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'" *Gates*, 234 F.3d at 227 (quoting *Gulf Oil*, 452 U.S. at 101). Such a balancing "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 102. The Eleventh Circuit has expanded upon this test and identified four criteria that are relevant to determining whether an order limiting contacts with class members is needed: the severity and likelihood of the perceived harm, the availability of a less onerous alternative, the precision with which the order is drawn, and the duration of the order. *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985).

Though the tests do limit courts' authority to issue orders limiting contact, this is not to say that courts should never issue such orders; in fact, "[c]ourts often issue protective orders after parties initiate improper communications with class members." *Haffer v. Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 115 F.R.D. 506, 512 (E.D. Pa. 1987) (citing *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720 (W.D. Ky.), *appeal dismissed*, 659 F.2d 1081 (6th Cir. 1981); *In re Fed. Skywalk*

5

*Cases*, 97 F.R.D. 370 (W.D. Mo. 1983)). Courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003) (citing *Kleiner*, 751 F.2d at 1206; *Burrell*, 176 F.R.D. at 244-45; *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994)). Additionally, "when a given form of speech is inherently conducive to overreaching and duress," a showing of a particular existing harm is not required; a likelihood of serious abuse is sufficient. *Kleiner*, 751 F.2d at 1206; *Hampton Hardware*, 156 F.R.D. at 633. Speech between parties with an ongoing business relationship is inherently conducive to coercive influence, *Hampton Hardware*, 156 F.R.D. at 633, and an employer-employee relationship is a salient example of this type of ongoing business relationship. *Recinos-Recinos v. Express Forestry, Inc.*, No. Civ.A. 05-1355, 2006 WL 197030, at *12 (E.D. La. Jan. 24, 2006); *Burrell*, 176 F.R.D. at 244.

      **1.**    **Severity and likelihood of harm**

Plaintiffs argue a protective order is necessary because Hernandez has already contacted plaintiffs and potential plaintiffs "with the sole purpose of inappropriately influencing [them] and tricking them to deny an element of their claim" by conceding that they were independent contractors instead of employees. Mot. 11. Presumably, Plaintiffs believe that without a protective order, Hernandez will continue to engage in this kind of intimidation. Mot. 8-9. The Court agrees. Based on the record before the Court, there is no dispute that Hernandez sent a letter to at least several Plaintiffs asking for their Social Security numbers and threatened a potential plaintiff, Justin Chavez, with a possible lawsuit to dissuade him from joining this case.

*See* Mot. Exs. A, C.  While benign explanations for the letter may exist, in light of the threatening nature of the contact with Chavez and because Defendants have failed to respond in any fashion to these assertions, the Court draws the conclusion advanced by Plaintiffs.  It appears Defendant was either using the letter as a pretext to inquire into Plaintiffs' immigration status or using it to indicate to Plaintiffs that their immigration status could and would be used as leverage against them in this case.  Either purpose is inappropriate.

"[I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant." *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987).  Discovery into immigration status in FLSA cases is therefore impermissible, because disclosure of immigration information could prevent parties from asserting their rights for fear of suffering immigration-related consequences.  *Id.* Considering Defendants had already made inquiry into immigration status within the discovery process and then sent the request for Social Security numbers near the close of the opt-in period, Defendants' behavior is even more suspect.  Because a plaintiff might not join this case, or might not vigorously pursue it, for fear of suffering adverse consequences related to her immigration status, future inquiries like those Hernandez has made could cause serious harm to Plaintiffs.  *Cf. O'Brien v. Morse*, No. 02 C 50026, 2002 WL 1290392, at *2 (N.D. Ill. June 11, 2002) (denying a request for protective order where record did not indicate potential abuse and plaintiff had not alleged abuse, but was prophylactically requesting protective order at time class was certified).

Similarly, direct contact between parties in class action litigation is to be avoided, presumably in part to avoid trickery and coercion; instead, any necessary contacts related to the subject matter of the litigation are to be funneled through the parties' respective counsel.  *Cobell*

*v. Norton*, 212 F.R.D. 14, 22 (D.D.C. 2002) (citing *Newberg on Class Actions* § 15.19, at 15-59 (3d ed. 1992) ("Unsupervised contacts between defendants and class members ... may result in sanctions for both the offending defendant and, when appropriate, the defendant's counsel."); *Annotated Manual for Complex Litigation* § 30.24, at 276 (3d ed. 2002) ("Under accepted ethical principles, defendants and their attorneys may communicate on matters regarding the litigation with class members who have not opted out, but only through class counsel.")). Defendants' bypass of Plaintiffs' counsel to request directly from Plaintiffs their Social Security numbers was therefore improper. Additionally, though one may generally threaten to file any lawsuit for which one has a good faith basis, *see Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 876 (5th Cir. 1984), the context in which Hernandez's threat was made against Chavez made the threat inappropriate here. *See Hampton Hardware*, 156 F.R.D. at 632. That is, assuming Defendants had a good faith basis for it, threatening suit against Chavez outside the context of his possibly being a party in this litigation may not have been wrongful. But making an identical threat while Chavez was a potential opt-in plaintiff, with the intention of dissuading Chavez from opting in, was decidedly improper.

### 2. Availability of a less onerous alternative

In determining whether there is available a less onerous alternative to Plaintiffs' requested protective order the Court must first determine precisely what Plaintiffs seek. In the statement of issues in their Motion, Plaintiffs state that the first issue is, "Whether there is good cause to protect Plaintiffs from Defendants' contacts regarding the subject matter of this lawsuit." Mot. 5. On the next page, in the introduction, Plaintiffs state that they seek a protective order prohibiting Defendants "from contacting Plaintiffs and potential Plaintiffs

8

outside of counsel in the present litigation." Mot. 6. Later, in the conclusion, Plaintiffs return to their first formulation, and request a protective order "restricting further contact by Defendant to plaintiffs and potential plaintiffs regarding the nature of this suit." Mot. 15. Finally, in their prayer and in their proposed order Plaintiffs ask the Court to "prohibit[] Defendants from contacting Plaintiffs or potential plaintiffs until the date of trial." Mot. 16; Pls.' Proposed Order 2, ECF 49-2. Based on these varied requests, it is unclear to the Court how broad of a protective order Plaintiffs seek.

The broadest order Plaintiffs seek, as expressed in their prayer and proposed order prohibiting Defendants from contacting Plaintiffs or potential plaintiffs until the date of trial, would be a drastic remedy. Plaintiffs have not proven that such a broad order is necessary, despite the Supreme Court's requirement that protective orders be "carefully drawn" and "limit[] speech as little as possible," *Gulf Oil*, 452 U.S. at 102. Additionally, in their Fourth Amended Complaint Plaintiffs define themselves as "current and/or former employees for Defendants – regardless of pay structure – who worked for Defendants for some period of time from July 7, 2007 to present." 4th Am. Compl. ¶ 23. Based on this, the Court must assume that some Plaintiffs are current employees. An order prohibiting all contact between the parties could therefore interfere with Defendants' management of their business, an extreme sanction. Given the harm shown on the record at this stage and considering the range of less restrictive measures that could address Plaintiffs' concerns, an order prohibiting all contact between the parties is not the least onerous alternative available.

Plaintiff's second formulation, a request to prohibit contact between Defendants and Plaintiffs and potential plaintiffs outside of counsel, is closer to the mark, but still unworkable for

9

similar reasons. An order allowing an employer to contact its employees only through the employees' attorney is not at all feasible given the often spontaneous contacts that arise between employer and employees in the daily operation of a business. And even on a record of much more coercive contact than appears here the Court would be hesitant to interfere with Defendants' rights to continue to operate their business.

The Court finds, as have several other courts, that Plaintiffs' narrowest suggested formulation, that Defendants not be allowed to communicate directly with Plaintiffs or potential plaintiffs regarding the subject matter of this case, is the least onerous option available. *See Hampton Hardware,* 156 F.R.D. at 633-34; *Rankin v. Bd. of Educ. of Wichita Pub. Schs.*, 174 F.R.D. 695, 697 (D. Kan. 1997); *Haffer*, 115 F.R.D. at 513. Plaintiffs' concerns are that Defendants, and Hernandez in particular, not be allowed to trick Plaintiffs into inadvertently making representations that tend to negate an element of their claims, and that Defendants not be allowed to coerce or intimidate Plaintiffs into not vigorously asserting their rights, by requesting information related to their immigration status or otherwise. Both of these concerns focus upon this litigation. Therefore, this formulation, which only limits contact relating to the subject matter of this litigation, is narrowly tied to the need for the order and impacts Defendants' speech no more than necessary. This type of order also leaves appropriate opportunity for Defendants to engage in unrelated contact with any Plaintiffs who currently work for them or who may desire to work for them again.

Other types of protective orders courts have fashioned to control contact between parties would be more disruptive to Defendants. One less restrictive order could require that Defendants only contact Plaintiffs and potential plaintiffs in writing, and not orally. But this order, too,

would run into the same problem of unduly inhibiting Defendants' necessary contact with current employees on a daily basis. Moreover, it would not suffice here, because the record at present already indicates that written inquiries into immigration status have had coercive effects. Another option, an order requiring Defendants to include a notice laying out the Plaintiffs' specific rights during the litigation, *see E.E.O.C. v. Morgan Stanley & Co., Inc.*, 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002), would likely constitute a form of compelled speech, which is "rarely, if ever, appropriate." *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (finding record of employer's abuse insufficient to justify an order requiring the employer to disseminate a court-drafted curative notice).

The Court finds an order restricting Defendants contacts relating to the subject matter of this lawsuit to be the least onerous alternative available that respects both parties' rights under the circumstances.

### 3. Precision with which the order is drawn

In drafting its order, the Court is mindful that it should restrict Defendants' contacts with the fewest number of individuals, and that it should be clear enough for Defendants to comply with. Therefore, the Court makes one modification to Plaintiffs' suggested formulation, and one clarification.

The Court modifies Plaintiffs' language to remove potential plaintiffs from the class of individuals Defendants are prohibited from contacting. The Court does so for three reasons. First and foremost, at this point the Court sees no purpose in restricting communications between Defendants and potential plaintiffs; the opt-in period has long since closed, so Defendants cannot trick those potential plaintiffs into self-defeating statements or intimidate them into dropping

11

their claims. Second, Plaintiffs have not presented any evidence that any potential plaintiffs were in fact intimidated into not joining this case, so there is no basis in the record at this time to warrant re-opening the opt-in period or allowing any specific potential plaintiffs to join late. *See* Mot. 7 (indicating only a possibility that Hernandez mailed the letter to potential plaintiffs); Mot. Ex. C (Chavez stating that he joined this case despite Hernandez' intimidation). Finally, when Plaintiffs filed their Motion, the opt-in period in which potential plaintiffs could join the suit had already closed, so even had the Court issued this order immediately upon receiving Plaintiffs' motion, none of the previously mentioned facts would have been different. Mot. (indicating a filing date of March 1, 2011, well after the January 29, 2011 cutoff date for opt-in forms). Accordingly, the Court will only prohibit Defendants from contacting current Plaintiffs. Indeed, in actuality, there exist no other plaintiffs at this stage of the litigation.

The Court's clarification pertains to the scope of contacts prohibited, namely, contact related to the subject matter of this lawsuit. The Court recognizes the potential for ambiguity in defining the exact contours of the 'subject matter' of this litigation, but nonetheless finds the phrase clear enough for Defendants and their counsel to comply with its order. To achieve this necessary clarity, the Court finds persuasive and adopts the court's explication of a similar term in *Cobell*. There, the court acknowledged that defining the term "'subject matter of the representation' for purposes of the anti-contact rule [could] sometimes be difficult." *Cobell*, 212 F.R.D. at 22. So, the *Cobell* court looked to the American Bar Association's annotations to the Model Rules of Professional Conduct to determine the boundaries of the phrase. *Id.* The court concluded that a lawyer could contact "a represented person about a matter in which the person is not being represented, if the lawyer has an independent justification for doing so." *Id.* (quoting

Annotated Model Rules of Professional Conduct 403 (4th ed.1999)). The court went on to explain that under this formulation, "communications occurring in the ordinary course of business" would not be prohibited. *Id.*

Defendants here should use an analogous test when determining whether their contacts are prohibited by the scope of the Court's protective order. If Defendants wish to contact Plaintiffs about a topic unrelated to this litigation, they may do so as long as they have an independent justification for doing so. Conversely, Defendants should refrain from contacting Plaintiffs about matters directly related to this case, such as their status as independent contractors or the hours they worked for Defendants. Additionally, and perhaps most crucially given the present record, Defendants should also refrain from contacting Plaintiffs regarding topics unrelated to this case if their justification for doing so is not independent of this litigation. Thus, for example, contact with Plaintiffs relating to immigration status would not be appropriate where, as happened here, Defendants had no justification for such inquiry independent of influencing how Plaintiffs pursue their claims in this case.

The Court finds an order covering only current Plaintiffs and allowing for unrelated, independently justified contact is sufficiently precise, in light of the parties' rights under the circumstances.

### 4. Duration of the order

The Court further modifies Plaintiffs' suggested formulation to include a time limitation. Once this case proceeds to trial or is settled there will be no further reason to protect Plaintiffs from contact with Defendants. At that point, Plaintiffs will have made a decision about what claims the evidence supports and how vigorously to pursue those claims, so Defendants will no

longer be able to intimidate or trick them. Furthermore, there is no indication that an order of shorter duration would provide significant relief to Defendants, and any such order would leave time for intimidation or coercion. *See Hampton Hardware*, 156 F.R.D. at 634. Accordingly, the Court will only prohibit contact between the parties until the time of trial or settlement, whichever occurs first.

In summary, the Court finds, based on the record of evidence produced by Plaintiffs as well as Defendants' silence, that Defendants' conduct so far indicates a sufficient likelihood of severe harm as to justify entry of a protective order. The Court has considered and selected the least onerous alternative order, and has carefully drafted it to restrict only specific types of contacts with specific individuals, and only for a specific time.

### B. Protective Order Preventing Discovery

Next, Plaintiffs seek an order protecting them from having to disclose their immigration status or employment. Mot. 12-14. Specifically, Plaintiffs seek to prevent inquiry into their Social Security numbers, employment authorization, birthplace, citizenship, school location, and residence for the last ten years. Mot. 13. Plaintiffs also seek a protective order prohibiting discovery of Plaintiffs' current and previous employers. Mot. 14. Defendants have not responded to these requests.

"The federal civil rules generally govern discovery; but the district courts' power to control it is evidenced by Rule 26(c), allowing protective orders to limit or compel discovery." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 515 (5th Cir. 1993). For good cause, courts may issue orders under Federal Rule of Civil Procedure Rule 26(c) "forbidding inquiry into . . . or limiting the scope of disclosure or discovery" into certain matters to protect parties

from "embarrassment" or "oppression." *Id.* The party requesting a protective order carries the burden of showing the need for the order, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" in support. *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).

As set forth above, "it is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant." *Reyes*, 814 F.2d at 170; *see also Patel v. Quality Inn S.*, 846 F.2d 700, 706 (11th Cir. 1988) (holding illegal immigrants to be entitled to protections of FLSA). In fact, the Fifth Circuit in *Reyes* considered the irrelevance of immigration status so self-evident that it granted a writ of mandamus directing the district court to deny discovery into immigration status. *Reyes*, 814 F.2d at 170. Several other courts have also denied discovery into immigration matters in FLSA cases because of the *in terrorem* effect discovery into such issues has on litigants. *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 501-03 (W.D. Mich. 2005); *Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192-93 (S.D.N.Y. 2002); *Flores v. Albertsons, Inc.*, No. CV0100515AHM(SHX), 2002 WL 1163623, at *5-6 (C.D. Cal. 2002). Other courts have also denied discovery into immigration status in other non-FLSA contexts. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004).

In line with these prior decisions, the Court has little trouble agreeing with Plaintiffs that immigration status is irrelevant to this case, and that inquiry into immigration status presents a strong likelihood of embarrassment and would have a chilling effect on Plaintiffs' ability and inclination to assert their rights. Accordingly, good cause exists to forbid Defendants from

15

inquiring into Plaintiffs' immigration status and to protect from discovery information requested only for revealing Plaintiffs' immigration status. Regarding Plaintiffs' request to prevent discovery into Plaintiffs' criminal history and residences for the past ten years, the Court recognizes that inquiry into that information may lead to revelation of Plaintiffs' immigration status. However, because past residences and criminal history are otherwise properly discoverable, the Court denies Plaintiffs' request for protection of that specific information. Plaintiffs' motion for an order prohibiting discovery of immigration-related information is therefore granted only in part.

Regarding Plaintiffs' request to prohibit discovery of Plaintiffs' current or former employment information, the Court does not find good cause to prohibit such inquiry. Plaintiffs have not demonstrated that this information is irrelevant to this litigation. Nor have Plaintiffs presented sufficient evidence to conclude that Plaintiffs have a reasonable fear of retaliation from their current or former employers based on their filing this case. Therefore, Plaintiffs' motion for an order prohibiting discovery of Plaintiffs' current and former employers is denied.

**C.     Sanctions**

Finally, Plaintiffs ask the Court to sanction Defendants for tampering with witnesses and intimidating Plaintiffs and potential plaintiffs from joining this action. Mot. 15. Defendants have not responded to this request.

Courts possess inherent power to sanction parties who act "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quotations omitted). Courts are also empowered under Federal Rule of Civil Procedure 37 to sanction parties for failing to cooperate with discovery. Fed. R. Civ. P. 37. The Court is

concerned by Hernandez's behavior, but does not find that sanctions are warranted at this time. Plaintiffs have not indicated a specific court order or discovery rule that Defendants have violated. Nor have they presented evidence of malfeasance so serious as to justify the exercise of the Court's inherent power to sanction. Therefore, Plaintiffs' request for sanctions is denied. However, if Defendants violate or attempt to circumvent this order, as by requesting immigration status information from Plaintiffs' current or previous employers, then the Court will not hesitate to revisit monetary sanctions.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion, ECF No. 49, is **GRANTED** in part. The Court **ENTERS** the following orders:

1. Defendants are prohibited from directly contacting Plaintiffs regarding the subject matter of this litigation, unless they have an independent justification for doing so, until the time of trial or settlement, whichever occurs first. Defendants or Defendants' counsel may continue to contact Plaintiffs through Plaintiffs' counsel.

2. Plaintiffs are protected from disclosing the following information unless Defendants show the Court good cause for disclosure:

    a. Identification documents, information regarding work authorization status, alien status, social security cards, visas, national origin, alien identification, federal, state, and local tax returns, or immigration status; and

    b. Documents or information whose disclosure would be solely for the

purpose of revealing Plaintiffs' immigration status.

Failure to abide by these orders may result in sanctions.

**SO ORDERED.**

**SIGNED** on this 20th day of April, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE